**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-2496

_____

|  |  |  |
|---|---|---|
| William Timothy Fister, guardian and parent on behalf of Mary Fister, | * * * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Minnesota New Country School, | * | |
| | * | [UNPUBLISHED] |
| Appellee. | * | |

_____

Submitted: May 7, 1998

Filed: May 11, 1998

_____

Before BOWMAN, Chief Judge, WOLLMAN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

PER CURIAM.

Mary Fister appeals from the district court's[1] grant of summary judgment to Minnesota New Country School (MNCS), a charter public school, in her 42 U.S.C. § 1983 action, alleging First Amendment and equal protection violations. We affirm.

---

[1]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

The parties' evidence, which we view most favorably to Mary, see Earnest v. Courtney, 64 F.3d 365, 366-67 (8th Cir. 1995) (per curiam), reveals the following. In the fall of 1995, MNCS students were studying deformed frogs found in the area. Mary, a twelve-year-old MNCS student, asked her fellow students for information for an article she was writing on the topic for publication on the Internet. After Mary obtained a quote from an MNCS student for the article, the student's parents wrote the following October 7 letter to Mary:

> Dear Mary:
>
> It has come to our attention you have been soliciting information and quotes from our son . . . regarding the frogs, his feelings about the frogs, and the research surrounding them. . . .[W]e do not want you using information or quotes given to you by our son for publication.

MNCS provided Mary a work space, including a divider on which she could display things; such postings were readily observed by others. In the fall of 1995, the student and his mother noticed that Mary had posted the October 7 letter in her work area, along with a sign stating, "Making a mountain out of a molehill."

MNCS had a written policy allowing students to "decorate their individual work space" but prohibiting the posting of "pictures/phrases of inappropriate sexual nature, profanity, drug, tobacco, or alcohol." Another MNCS policy prohibited students from endangering "the safety, health, or well being of other students or school personnel" in any way, and specified that "[f]ighting, threatening language, other endangerment or harassment" would "be grounds for suspension and/or expulsion."

Dean Lind, Mary's teacher and advisor, attested that after Mary posted the letter, the other student and his brother, as well as the boys' parents, told Mr. Lind the posting was disturbing the boys and was interfering with their ability to receive an education; they also told Mr. Lind they considered the posting harassment. When Mary failed to

remove the posting, MNCS staff removed it; whenever the letter was removed, Mary re-posted it, triggering a pattern of removal and re-posting. The boys' mother continued to complain that the posting was making it "very difficult" for her sons to do their schoolwork.

Mr. Lind attested that the posting and re-posting disrupted education at MNCS, both as to the brothers, and as to students in general. After two instances of being suspended for disobeying the school's directive to remove and not re-post the letter, Mary was again suspended when she posted the letter. Following a hearing, MNCS expelled Mary for a year. In an affidavit presented to the district court, Mary denied engaging in disruptive conduct or noticing any "significant commotion" while she posted the letter; she attributed any commotion, which was neither loud nor "compelling to distraction," to MNCS's disciplinary actions.

The district court entered judgment for MNCS, concluding the school was within its authority in finding that Mary's conduct constituted harassment prohibited by school policy, and in punishing Mary. The court found uncontroverted evidence established that the brothers in question "were severely affected in their schoolwork" because of Mary's "knowing actions" and that her conduct materially and substantially interfered with the school's discipline and operation. The court also rejected Mary's equal protection claim. On appeal, Mary contends that MNCS created a limited public forum, and there was insufficient evidence that the posting caused a disruption or damaged the brothers' academic performance.

We agree with the district court that MNCS did not violate Mary's First Amendment rights, because Mary posted material directed at another student and his family, and school officials had received complaints that the student and his brother felt harassed and were suffering an interference with their education. See Hazelwood Sch. Dist. v. Kulhmeier, 484 U.S. 260, 266 (1988) (noting public school students cannot be punished merely for expressing their personal views on the school premises,

"unless school authorities have reason to believe that such expression will 'substantially interfere with the work of the school or impinge upon the rights of other students'"; (quoting <u>Tinker v. Des Moines Indep. Community Sch. Dist.</u>, 393 U.S. 503, 509 (1969)); <u>cf.</u> <u>Bethel Sch. Dist. No. 403 v. Fraser</u>, 478 U.S. 675, 681-85 (1986) (upholding sanction against student for "lewd" speech in student assembly, noting that penalties imposed were "unrelated to any political viewpoint" and that school had to balance student's freedom of expression with society's interest in teaching socially appropriate behavior).

We also reject Mary's limited-public-forum argument because students were not permitted indiscriminate use of their display boards:  MNCS had a practice of removing or asking students to remove postings critical of other students or perceived by other students as harassing, and Mary could not recall students ever posting anything offensive or anything directed at anyone else in the school.  <u>See</u> <u>Kuhlmeier</u>, 484 U.S. at 267 (school facilities are deemed to be public forums only if school authorities intentionally open facilities for indiscriminate use by general public or by some segment of public).

We further reject Mary's equal protection claim, because she has failed to offer evidence that she was treated differently from others similarly situated to her.  <u>See</u> <u>Klinger v. Department of Corrections</u>, 31 F.3d 727, 731 (8th Cir. 1994), <u>cert. denied</u>, 513 U.S. 1185 (1995).  Finally, we reject any contention that the district court abused its broad discretion in denying Mary's motion to compel production of certain information.  <u>See</u> <u>Duffy v. Wolle</u>, 123 F.3d 1026, 1040 (8th Cir. 1997) (standard of review), <u>petition for cert. filed</u>, (U.S. Jan. 27, 1371); <u>In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.</u>, 113 F.3d 1484, 1490 (8th Cir. 1997).

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.